WILLIAM S. SIZER, Respondent, v. THOMAS S. RAY, Impleaded, etc., Appellant.

The firm of R. & S., in consideration of the grant to them by A. of the exclusive right to manufacture steam gauges under a patent held by the latter, agreed to manufacture sufficient of the patented article to satisfy the marketable demand and to pay A. a specified royalty. Afterward M. was admitted as a partner, and it was provided in the articles of partnership of the new firm of R. S. & M., that all rights to use inventions secured to any of the parties might be used by it. S. (plaintiff) subsequently retired from the firm, selling out his interest to his copartners, who assumed and agreed to pay all debts owing by the firm. R. & M. thereafter continued to manufacture the gauges. A. brought an action against R. & S. to recover the specified royalties for gauges manufactured by R. S. & M., and by R. & M., and recovered judgment, one-half of which S. paid. In an action to recover the amount so paid for gauges manufactured by R. & M., *held*, that plaintiff had no right of action under the agreement of R. & M. to assume the debts of the firm of R. S. &

M., as the claim was not a debt of that firm; but that the right to manufacture under the contract with A., which passed to R. & M. on the purchase of the interest of S., was subject to the obligation to pay the royalties on the gauges they should manufacture ; that S., as to R. & M., thereafter occupied the position of surety, and when compelled to pay such royalties, he was entitled to be reimbursed by that firm.

Also *held*, that it was not incumbent on S. to show that R. & M. realized a profit from the business ; and that the fact that R. & M. claimed to manufacture in hostility to, not under A.'s patent, did not relieve them from liability ; also that the judgment in the suit of A. conclusively established, as against R., that the gauges were manufactured under the patent.

(Argued November 30, 1881 ; decided December 13, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made January 6, 1880, which reversed a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial.

This action was brought to recover an amount paid by plaintiff on a judgment obtained against him and defendant Ray by one Allen. It appeared that plaintiff, and defendant Ray were, previous to May 2, 1870, in copartnership in the manufacture of steam gauges, under the name of the Buffalo Steam Gauge Company, and also under the firm-name of Ray & Sizer. They then held a contract with Allen, bearing date November 7, 1868, by which Allen, then owning certain patents, gave to Ray & Sizer the exclusive license to manufacture steam gauges under two patents — one expiring October 4, 1873, and the other August 14, 1874. In this agreement Ray & Sizer agreed to supply the marketable demand for steam gauges made under these patents, and to pay for each gauge made and sold, a royalty mentioned in the contract. In December, 1869, Ray & Sizer attempted to repudiate this contract, and notified Allen that they would no longer pay him royalties under it. Afterward, and on the 2d day of May, 1870, Charles A. Marvin was admitted into the firm, which then became Ray, Sizer & Marvin, and also continued the firm-name of the Buffalo Steam Gauge Company. Under the articles of copartnership all rights to use certain ·inventions regarding

steam gauges, which were secured to any of the said parties, were to be devoted to the partnership, and might be used in the prosecution of its business. On the first of August, 1870, the firm of Ray, Marvin & Sizer was dissolved, by plaintiff selling out his interest to Ray & Marvin. On this occasion Ray & Marvin executed to plaintiff the following instrument:

"BUFFALO, *August* 1, 1870.

For a valuable consideration, we do hereby agree to assume any and all debts owing by what is known as the Buffalo Steam Gauge Company, and to pay the same as they mature, without any unnecessary delay."

THOS. S. RAY
C. A. MARVIN."

The successive firms continued to manufacture steam gauges, and after the expiration of the Allen patents, and the running out of the Allen contract, Allen commenced suit against Ray & Sizer to recover the amount of royalties due him for gauges made by the firms of Ray, Sizer & Marvin, and Ray & Marvin. He recovered a judgment for royalties due for the gauges made by the two firms. Execution was issued on this judgment, of which Sizer was compelled to pay one-half, and he then brought this suit to recover back the half he was compelled to pay.

Further facts appear in the opinion.

*James A. Allen* for appellant. In the statutes of bankruptcy and those prescribing a legal tender, the broad signification of the words "debts and claims," on grounds of public policy, has been generally adopted. (*Lewis* v. *N. Y. C. R. R. Co.*, 49 Barb. 330; *Kempton* v. *Bronson*, 45 id. 618; *Stokes* v. *Mason*, 12 Bk. Reg. 498; 4 S. & R. 506; 10 R. I. 261.) The nonsuit was right, and the repudiated contingent liability of Ray & Sizer under the Allen agreement did not fall within the scope of the contract of indemnity of August 1, 1870. (*Leggett* v. *Bk. of Sing Sing*, 24 N. Y. 291; *Wentworth* v.

*Whittemore*, 1 Mass. 471; *Davis* v. *Ham*, 3 id. 33; *Frothing-ham* v. *Haley*, id. 68; *Garrison* v. *Howe*, 17 N. Y. 458; *Weston* v. *City of Syracuse*, id. 110; *People, ex rel. Stephens*, v. *Halsey*, 53 Barb. 547; affirmed, 37 N. Y. 344; *Hibbard* v. *Clark*, 56 id. 155; *Merch. N. Bk. of Whitehall* v. *Hall*, 18 Hun, 178; *Adams* v. *Mills*, 38 Sup. Ct. 26; affirmed, 60 N. Y. 533; *People* v. *Arguello*, 37 Cal. 524; *Peck* v. *Collins*, 70 N. Y. 381; *Blossom* v. *Griffith*, 13 id. 569, 574, 575; *Nichols* v. *Tifft*, 56 id. 644; *Hasbrook* v. *Paddock*, 1 Barb. 637–8; *Merrill* v. *Gore*, 29 Me. 346; 2 Pars. on Cont. 499, 500, note *t;* Chitty on Contracts, 104; *Lawrence* v. *Dole*, 11 Vt. 549; *Dart* v. *N. A. Steamship Co.*, 49 N. Y. 395; *Davis* v. *Barney*, 2 Gill. & J. 382; *Wilson* v. *Troup*, 2 Cow. 195; *Sumner* v. *Williams*, 8 Mass. 214.) The writing forms the boundary and absolute limit of the whole engagement of Ray & Marvin. (*Hall* v. *Samson*, 19 How. Pr. 489, 490.) There was nothing in the case which made Ray & Marvin the assignees of the Allen contract. This could only have been done by a writing. (R. S. of U. S., § 4898; Patent Act of 1870, § 36; Curtis on Patents, § 178 [3d ed.]; *Ashcroft* v. *Walworth*, 2 Off. Gaz. of Pat. Office, 456; 5 Fisher's Patent Law Cases, 528; *Davy* v. *Morgan*, 56 Barb. 226; *Marston* v. *Swett*, 82 N. Y. 526.) There was no error in the refusal of the court to allow the plaintiff to go to the jury on the question whether Ray & Marvin agreed by parol to indemnify the plaintiff from liability under the Allen contract. (*Cram* v. *Union Bk. of Rochester*, 1 Abb. Ct. of App. Dec. 461.)

*Spencer Clinton* for respondent. The court erred in ordering a nonsuit. Plaintiff stood as surety simply for Ray & Marvin (64 N. Y. 205; 11 Hun, 33; 2 Johns. Ch. 227.) When the surety is compelled to pay a judgment against himself and his principal he can recover it back. (*Ontario Bk.* v. *Walker*, 1 Hill, 652; *Bk. of Selma* v. *Abbott*, 3 Den. 181.) In construing the paper to ascertain the intention of the parties, the court and jury had the right, and it was their duty, to look at all the surrounding circumstances at the time of its execution,

and to the pre-existing relations between the parties. (*Blossom* v. *Griffin*, 13 N. Y. 569.) As either Ray or Sizer could use the license, whatever firm they joined could use it also. (*Wilder* v. *Stearns*, 48 N. Y. 656; *De Witt* v. *Noble*, 5 Hun, 301.) The notice to Allen that Ray & Marvin would no longer manufacture, or pay him royalty, did not change the rights of either party, in view of the fact that they did manufacture, and proposed to manufacture, believing the Allen patent to be invalid. (*Union Man. Co.* v. *Lounsbury*, 41 N. Y. 363, 372.) The word "debt" used in the instrument was intended to cover the Allen claim. (*Martin* v. *Cope*, 28 N. Y. 180; 3 Bl. Com. 154; 4 S. & R. 506; *Gram* v. *Caldwell*, 5 Cow. 489.) Although some of the assets were forgotten, they passed by the assignment, and liabilities not known or believed to exist were assumed. (*Cram* v. *Union B'k*, 42 Barb. 426; *S. C.* 1 Abb. Ct. of App. Dec. 461; *Couch* v. *Delaplaine*, 2 N. Y. 397.) The circuit judge erred in not submitting to the jury the question whether the liability of the firm of Ray & Marvin, to Allen, under the Allen contract, was not included in the guaranty of indemnity given by Ray & Marvin to the plaintiff. (*First Nat. Bk. of Springfield* v. *Dana*, 79 N. Y. 108; *Pitney* v. *Glens Falls Ins. Co.*, 65 id. 6; *Martin* v. *Cope*, 28 id. 180.)

ANDREWS, CH. J. Ray & Marvin, by the instrument of August 1, 1870, executed by them to the plaintiff, on the sale by the latter to his copartners, of his interest in the Buffalo Steam Gauge Company, consisting of Ray, Sizer & Marvin, agreed "to assume any and all debts owing by what is known as the Buffalo Steam Gauge Company, and to pay the same as they mature without any unnecessary delay." The plaintiff seeks, in this action, to recover the sum which he has been compelled to pay by the judgment in the suit of one Allen, against Ray & Sizer, for royalties, under their contract with Allen of November 7, 1868, on steam gauges manufactured and sold by Ray & Marvin subsequent to August 1, 1870. By the Allen contract, Ray & Sizer, in consideration of the grant by Allen,

of the exclusive right to manufacture gauges under his patent, covenanted that they would manufacture gauges in sufficient quantities to satisfy the marketable demand, and pay a specified royalty to Allen. The copartnership of Ray, Sizer & Marvin was formed May 2, 1870, and it was provided in the copartnership articles, that all rights to use inventions for steam gauges, which were secured to any of the parties, might be used by the firm. The plaintiff claims, that by force of the assumption clause in the agreement of August 1, 1870, all liabilities, which might at any time arise or be enforced against Ray & Sizer, under the Allen contract, were assumed by Ray, Sizer & Marvin, and that the liability for royalties for gauges, manufactured by Ray & Marvin subsequent to August 1, 1870, upon which the judgment was recovered, was a debt of Ray, Sizer & Marvin, within that agreement. It is contended by the defendant, on the other hand, that the assumption by Ray & Marvin, did not cover the contingent liability of Ray & Sizer, under their agreement with Allen, but embraced only money demands arising upon contract, owing by the Buffalo Steam Gauge Company, and existing at the date of the agreement; that such claims only, were debts within the meaning of the contract, and that the contingent liability under the Allen contract, which might never ripen into a recoverable claim, was not within the purview of the instrument of assumption.

We are inclined to concur in the view that the plaintiff had no right of action under the agreement of August 1, 1870, on two grounds: *first*, because the liability on which the recovery against Ray & Sizer was had, did not then exist, and was not a debt within that agreement; and *second*, because if it was a debt, it was not one of the debts of Ray, Sizer & Marvin. Assuming, as we think is clear, that by the partnership agreement of Ray, Sizer & Marvin, that firm became entitled to use the Allen patent, it did not impose upon the firm, in the absence of a special covenant, the burden of the Allen contract, beyond an obligation to pay the specified royalties, on gauges which should be manufactured by the firm. It did not

cast upon the firm of Ray, Sizer & Marvin, as between Allen and the firm, or as between the firm, and Ray & Sizer, an obligation to manufacture the gauges, or to supply the marketable demand, or to pay royalties on gauges which might be manufactured by other persons.

If the plaintiff's action rested solely upon that agreement, the nonsuit was properly granted, but the plaintiff was entitled to have the nonsuit set aside, if upon any ground consistent with the case made by the pleadings and evidence, the case should have been submitted to the jury. We think the evidence tended to establish a claim in favor of the plaintiff, against the firm of Ray & Marvin, wholly independent of the written agreement.

The right to manufacture under the Allen contract, as has been said, was vested in the firm of Ray, Sizer & Marvin, upon the organization of that firm, by the articles of copartnership, and this right passed to Ray & Marvin, on the purchase of Sizer's interest, as part of the assets of Ray, Sizer & Marvin, subject, however, to the obligation to pay the royalties on the gauges they might subsequently manufacture under the contract. The liability of Ray & Sizer, to Allen, was not, however, affected by this transfer. They would be jointly liable to Allen, for royalties on gauges manufactured and sold, whether manufactured by them on joint account, or individually, or by Ray & Marvin. The plaintiff, having transferred his interest under the Allen contract, to Ray & Marvin, occupied as to them the position of surety, for any liability for royalties on gauges which might thereafter be manufactured by the new firm. The new firm could not manufacture under the Allen contract, and cast upon Sizer the burden of paying the royalties. When, therefore, the plaintiff was compelled to pay royalties on gauges manufactured and sold by Ray & Marvin, he was entitled to be reimbursed by the firm. This cause of action was within the pleadings and evidence, and does not rest upon the agreement of August 1, 1870, but upon distinct and independent equities, arising subsequent to the sale. The equity of the plaintiff to indemnity, does not

depend upon the fact, whether Ray & Marvin, realized a profit on the gauges manufactured. The provision in the Allen contract, that Ray & Sizer should manufacture gauges in quantities sufficient to supply the marketable demand, cannot be construed to require them to manufacture at a loss, or to sell them below the cost of manufacture, and it was not incumbent upon the plaintiff to show, that Ray & Marvin realized a profit from the business. The fact that Ray & Marvin claimed to manufacture in hostility to, and not under the patent, did not relieve the defendant from liability to the plaintiff. The judgment in the suit of Allen, against Ray & Sizer, conclusively establishes, as against Ray, that the gauges were manufactured under the patent. It is not denied that the gauges manufactured were the same articles described in the Allen patents, and the validity of these patents, is not now questioned. It is no answer to the plaintiff's claim for indemnity, that Ray & Marvin treated the patent as void. They cannot be permitted to say, as against him, that they did not manufacture under the Allen patents. Having acquired the right to the use, by the purchase of the plaintiff's interest, what they did, must be deemed to have been done in subordination to Allen's rights, and not in hostility to them. The fact that Ray & Marvin, denied the validity of the patents, would have constituted no defense to Ray & Sizer, in the Allen suit, and is not a defense to Ray & Marvin in this action.

The plaintiff is not precluded from claiming that there was evidence tending to establish a cause of action independently of the agreement of August 1, 1870. The nonsuit was therefore improperly granted.

The order granting a new trial should be affirmed, and judgment absolute ordered for the plaintiff, on the stipulation.

All concur, except MILLER, J., absent.

Order affirmed, and judgment accordingly.